UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 9:23-cv-80398

SECURITIES AND EXCHANGE COMMISSION,   )
                                      )
        Plaintiff,                    )
                                      )
v.                                    )
                                      )
PETER D. KRIEGER                      )
                                      )
                                      )
        Defendant.                    )
                                      )

**COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF AND
DEMAND FOR JURY TRIAL**

Plaintiff Securities and Exchange Commission ("Commission") alleges:

**I.   INTRODUCTION**

1.  From May 2016 through August 2020, Oban Energies, LLC ("Oban"), a Florida-based entity managed by Defendant Peter D. Kreiger, raised approximately $15 million from 23 investors. Investors, some of whom were elderly, were told that their funds would be used to develop an oil refinery and storage facility in the Bahamas (the "Project").

2.  In reality, from January 2017 through August 2020, Defendant misappropriated approximately $5.2 million of investor funds to pay for personal expenses, such as luxury cars, jewelry, and vacations.

3.  By engaging in this conduct, Defendant violated Sections 17(a)(1) and 17(a)(3) of the Securities Act of 1933 ("Securities Act"),15 U.S.C. §§ 77q(a)(1) and 77q(a)(3); Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"),15 U.S.C. § 78j(b); and

Exchange Act Rules 10b-5(a) and 10b-5(c) promulgated thereunder, 17 C.F.R. §§ 240.10b-5(a) and 240.10b-5(c). Unless enjoined, Defendant will continue to violate the federal securities laws.

## II.   **DEFENDANT**

4.   Krieger, age 49, is a resident of Jupiter, Florida. Krieger was Oban's manager, ran its day-to-day operations from 2017 through 2018, and maintained exclusive control over Oban's bank account from January 2017 through August 2020.

## III.   **RELEVANT ENTITY**

5.   Oban was a Florida limited liability company formed in June 2016 with its principal place of business in Palm Beach Gardens, Florida. Oban was dissolved in March 2021, and its assets and liabilities were purchased by Lucayan Trans Fuels LLC ("Lucayan"), which was formed by certain Oban investors.

## IV.   **JURISDICTION AND VENUE**

6.   The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act, 15 U.S.C. §§ 77t(b), 77t(d), and 77v(a), and Sections 21(d), 21(e), and 27 of the Exchange Act, 15 U.S.C. §§ 78u(d), 77u(e) and 78aa.

7.   This Court has personal jurisdiction over Defendant and venue is proper in this district because many of Defendant's actions and transactions constituting violations of the Securities Act and the Exchange Act occurred in this district, Defendant resides in this district, and Oban's principal place of business was in this district.

8. In connection with the conduct alleged in this Complaint, Defendant, directly and indirectly, made use of the means or instrumentalities of interstate commerce, the means or instruments of transportation and communication in interstate commerce, and the mails.

## V. FACTS

### A. Defendant Led Oban's Efforts to Develop the Project in the Bahamas

9. In 2009, Defendant and the Bahamian government began discussing Defendant's interest in developing the Project with capital raised from U.S. investors.

10. After years-long discussions progressed, Oban was formed in mid-2016 to develop the Project and started raising money from investors to fund the Project.

11. Most investors in Oban are friends with Defendant and each other, live at least part-time in the same community, and were solicited by word-of-mouth.

12. Investors entered into a written Operating Agreement, which was last amended on March 12, 2018. The Operating Agreement refers to investors as "Members," who each received a "Member Interest" in Oban in exchange for their capital contribution. The Operating Agreement is an investment contract. Investors relied solely on Oban to generate profits and Oban's ability to do so depended entirely on its ability to successfully develop the Project. As an investment contract, the Operating Agreement is a security within the meaning of the Securities Act and the Exchange Act.

13. Defendant ran Oban's day-to-day operations and led its efforts to develop the Project. In February 2018, Oban and the Bahamian Government signed a Heads of Agreement (the "Agreement") awarding Oban the rights to develop the Project. Shortly thereafter, however, the Bahamian Government sought to renegotiate the terms of the Agreement.

14.     In the meantime, Oban formalized a board of managers (the "Board") in March 2018. The Board consisted of four investors who were to provide oversight over the Project and status updates to members while renegotiation discussions with the Bahamian Government ensued.

15.     The Board had exclusive authority to manage and control all aspects of Oban's business and operations, including but not limited to, overseeing Oban's day-to day operations, making expenditures to conduct Oban's business, and investing Oban's assets.

16.     Despite stepping back as the face of Oban in early 2018 shortly after the Agreement was executed, Krieger continued to spearhead the Project on behalf of Oban and maintain exclusive control over its bank account.

17.     In late 2020, Oban's Board discovered that Defendant was misappropriating investor funds for personal use and immediately took steps to remove him from Oban.

B.     **Defendant Misappropriated Investor Funds**

18.     From January 2017 through August 2020, Defendant was the sole signatory on Oban's bank account and exercised exclusive control over it.

19.     During that time, Defendant misappropriated at least $5.2 million of investor funds to pay for personal expenses, such as luxury cars, jewelry, designer clothing, vacations to Aspen and Hawaii, and day-to-day living expenses.

20.     Specifically, Defendant diverted approximately $3.7 million of investor funds through various means to the bank account of an unrelated entity he controlled, Mid Atlantic Group, Inc. ("MAG"). For instance, Defendant deposited approximately $795,000 of investor funds directly into MAG's bank account. Defendant also diverted through hundreds of

electronic funds transfers approximately $1.37 million of investor funds from Oban's bank account to MAG's bank account. Furthermore, in an effort to conceal his misappropriation, Defendant transferred $1.5 million of investor funds from Oban's bank account to an account for another entity he controlled, S&P Projects, LLC ("S&P"). From there, Defendant transferred the $1.5 million to the trust accounts of Oban's outside attorney, who then routed the money back to MAG.

21. Additionally, Defendant transferred another $1.5 million in investor funds from Oban's bank account to pay credit card charges for S&P.

22. Defendant's transfers of approximately $5.2 million of investor funds for his personal use were not disclosed to or authorized by Oban's Board.

## VI.  CLAIMS FOR RELIEF

### COUNT 1

### VIOLATIONS OF SECTION 17(a)(1) OF THE SECURITIES ACT

23. The Commission adopts by reference paragraphs 1 through 22 of this Complaint.

24. Defendant, in the offer or sale of securities by use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, knowingly or recklessly employed devices, schemes, or artifices to defraud.

25. By reason of the foregoing, Defendant, directly or indirectly, violated and, unless enjoined, is reasonably likely to continue to violate Section 17(a)(1) of the Securities Act, 15 U.S.C. § 77q(a)(1).

## COUNT 2

## VIOLATIONS OF SECTION 17(a)(3) OF THE SECURITIES ACT

26. The Commission adopts by reference paragraphs 1 through 22 of this Complaint.

27. Defendant, in the offer or sale of securities by use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, negligently engaged in transactions, practices, or courses of business which operated or would have operated as a fraud or deceit upon the purchasers.

28. By reason of the foregoing, Defendant, directly or indirectly, violated and, unless enjoined, is reasonably likely to continue to violate Section 17(a)(3) of the Securities Act, 15 U.S.C. § 77q(a)(3).

## COUNT 3

## VIOLATIONS OF SECTION 10(b) AND RULE 10b-5(a) OF THE EXCHANGE ACT

29. The Commission adopts by reference paragraphs 1 through 22 of this Complaint.

30. Defendant, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, knowingly or recklessly employed devices, schemes or artifices to defraud in connection with the purchase or sale of securities.

31. By reason of the foregoing, Defendant, directly or indirectly, violated and, unless enjoined, is reasonably likely to continue to violate Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Exchange Act Rule 10b-5(a), 17 C.F.R. § 240.10b-5(a).

**COUNT 4**

**VIOLATIONS OF SECTION 10(b) AND RULE 10b-5(c) OF THE EXCHANGE ACT**

32. The Commission adopts by reference paragraphs 1 through 22 of this Complaint.

33. Defendant, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, knowingly or recklessly engaged in acts, practices, and courses of business which have operated, are now operating and will operate as a fraud upon the purchasers of such securities.

34. By reason of the foregoing, Defendant, directly or indirectly, violated and, unless enjoined, is reasonably likely to continue to violate Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Exchange Act Rule 10b-5(c), 17 C.F.R. § 240.10b-5(c).

**VII.   RELIEF REQUESTED**

**WHEREFORE**, the Commission respectfully requests that the Court find the Defendant committed the violations alleged and:

**A.   Permanent Injunction**

Issue a Permanent Injunction, restraining and enjoining Defendant from violating Sections 17(a)(1) and 17(a)(3) of the Securities Act, Section 10(b) of the Exchange Act, and Exchange Act Rules 10b-5(a) and 10b-5(c) promulgated thereunder.

**B.   Conduct-Based Injunction**

Issue a Conduct-Based Injunction, restraining and enjoining Defendant from (i) participating in the issuance, purchase, offer, or sale of any security provided, however, that such injunction shall not prevent Defendant from purchasing or selling securities for his own

personal account, and (ii) participating in the management, supervision of, or otherwise exercising any control over, any commercial enterprise or project that issues, purchases or sells securities, pursuant to Section 21(d)(5) of the Exchange Act.

### C.     Disgorgement

Issue an Order directing Defendant to disgorge all ill-gotten gains, including prejudgment interest, resulting from the acts or courses of conduct alleged in this Complaint.

### D.     Civil Penalty

Issue an Order directing Defendant to pay civil money penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78(d).

### E.     Officer and Director Bar

Issue an Order, pursuant to Section 20(e) of the Securities Act, 15 U.S.C. § 77t(e), and Section 21(d)(2) of the Exchange Act, 15 U.S.C. § 78u(d)(2), barring Defendant from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act or that is required to file reports pursuant to Section 15(d) of the Exchange Act.

### F.     Further Relief

Grant such other and further relief as may be necessary and appropriate.

### G.     Retention of Jurisdiction

Further, the Commission respectfully requests that the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that it may enter, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

VIII. **DEMAND FOR JURY TRIAL**

The Commission hereby demands a trial by jury on any and all issues in this action so triable.

March 13, 2023

Respectfully submitted,

By: /s/ Stephanie N. Moot
Stephanie N. Moot
Senior Trial Counsel
Fla. Bar No. 30377
Direct Dial: (305) 982-6313
E-mail: moots@sec.gov

Steven J. Meiner
Senior Counsel
New York Bar No. 2785806
Direct Dial: (305) 982-6336
E-mail: meiners@sec.gov

Attorneys for Plaintiff
**Securities and Exchange Commission**
801 Brickell Avenue, Suite 1950
Miami, FL 33131
Telephone: (305) 982-6300
Facsimile: (305) 536-4154